Sandra L. Jacquot Shawnee County Counselor 200 S.E. Seventh Street, Suite 100 Topeka, Kansas 66603-3932
Dear Ms. Jacquot:
As Shawnee county counselor you request our opinion regarding the ability of the county to collect sewer service fees from property owners benefited by such services. You indicate that the county recently discovered that owners of approximately 215 parcels of land served by the county sewer system were never billed for sewer services, and thus failed to pay the county for such services. Some of the unpaid fees date back four years. While the failure to pay for these services may in large part be attributed to the fact that the county never billed for the services, you indicate that in some instances the city of Topeka billed and was paid for sewer services to those parcels located within the city. You question whether the county may now collect the unpaid fees, and, if so, what terms may be offered by the county to those property owners who should have been billed and required to make payments.
You inform us that the sewer system in question was originally within a benefit district and was formed pursuant to state improvement district statutes. Subsequently, the system became a county sewer district by interlocal agreement and is now operating under the authority set forth at K.S.A. 19-27a01 et seq. Thus, this is the statutory scheme we will examine in determining the authority of the county to initially charge users for sewer services. We assume for purposes of this opinion that facts exist to show that the county originally had the power to create the district and charge users or property owners for the costs in question, that it correctly followed all applicable and mandatory procedural requirements involved, that it is now properly operating under K.S.A. 19-27a01 et seq., and that any fees now claimed were properly imposed.
Pursuant to K.S.A. 19-27a02, the board of county commissioners has authority to:
 "(i) issue permits to any individual or corporation to build any sewers in any lateral or joint sewer districts under plans and specifications and under terms approved by the governing body and under its inspection. The cost of the construction shall be borne entirely by the person or corporation contracting for the improvements . . . (k) create lateral sewer districts and assess the cost thereof against the owner of the property benefited or against the maintenance budget of the main sewer district . . . (n)(1) adopt any rule, regulation, standard, limitation or requirement which is necessary to provide for the efficient and economical operation of the sewer system . . . (7) all penalties, damages and costs assessed or awarded pursuant to the authority of this section shall be a lien upon the premises of the violator from the date assessed or awarded until the date fully paid. All proceeds received or collected from fines, penalties, damages or costs shall be used by the governing body first to defray costs of administering any rule, regulation, standard, limitation or requirement adopted pursuant to this section and then to defray the costs of any repairs, replacements, maintenance or reconstruction necessitated by violations thereof, and then to defray the general operation and maintenance costs of the sewer district." (Emphasis added).
K.S.A. 19-27a07 authorizes counties to assess for the cost of sewer systems within a sewer district:
 "(a) After a sewer district has been created and improvements have been completed, the governing body of the sewer district shall determine the cost of the improvements and the proposed special assessment to be made against each tract of land within the district and shall prepare a proposed assessment resolution containing an assessment roll. The proposed assessment roll shall be filed with the county clerk and shall be open for public inspection. . . ."
K.S.A. 19-27a09 permits a tax levy and user charges to be collected from individuals, cities, townships, sewer districts or other municipalities for the use of the sewer district facilities. In addition, if bonds have been issued and remain unsatisfied, K.S.A. 19-27a23 speaks to a permissive annual tax on real property benefited by a sewer district but suffering from abnormal delinquencies in the payment of special assessments.
If the debt in question arose under any of these provisions, it may be a statutorily created obligation. Ordinarily, K.S.A.60-512 places a three year time limit upon the pursuance of actions based on statutory liability [penalties and forfeitures are exceptions to this general rule]. The time begins to run on liabilities created by statute at the point at which the plaintiff has an actionable cause of action. 54 C.J.S. 198 LiabilitiesCreated by Statute (1987). However, as discussed in City ofWichita, Kan. v. Gypsum Co., 828 F. Supp. 851, 861 (D.Kan. 1993), the statute of limitation rules are altered if the debt is one owed to a public entity. Kansas attaches great importance to the preservation of public rights:
 "[b]ar of the statute may be inferred from the enactment of K.S.A. 60-521 which, by negative implication, retains governmental immunity from the statute of limitations for causes of actions arising out of governmental functions . . . the doctrine of governmental immunity from statutes of limitation has been and remains supported by modern law by the important policy that public rights and causes of action should not be lost by acts or omissions of public officers."
Thus, as further discussed in Gypsum, if the action arises out of the performance of a governmental function, rather than a proprietary one, it is not time barred.
 "In determining whether activities of a municipal corporation are governmental or proprietary, it is proper to consider whether the activity is primarily for the advantage of the state as a whole or the special local benefit of the community involved, and to further consider whether such activity is in performance of a duty imposed upon the municipality by the sovereign power, or is in the exercise of a permissive privilege given by the sovereign power, but such tests are not conclusive to determine the capacity in which the city's activities are conducted." Id. at 860.
 "The operation and maintenance of a sewage system by a municipality is an exception to the rule that in the operation of a public utility a municipality acts in a proprietary capacity; sewage disposal is a governmental function. Accordingly, the establishment of rates to be charged for sewage disposal for customers within the corporate limits of a municipality is a governmental function." 11 McQuillins Mun. Corp. § 31.10 (1991). We agree that utility bills for use of a sewage system arise out of the exercise of governmental authority. Thus, in answer to your first question, it is our opinion that a properly imposed utility assessment for services of a county sewer system is not time barred merely because the county failed to properly bill within a certain time period.
Your second question concerns the permissibility of arranging or allowing payments on the now realized debt potentially owed by owners of property benefited by this sewer system. Some debts owed to the public coffers come with specifically imposed payment schedules or a prohibition against waiver or abatement. See e.g. K.S.A. 79-2017 (collection of property taxes). Moreover, unpaid assessments that become a lien on real property are commonly pursued through judicial foreclosure on the property. See K.S.A.79-2801(d), K.S.A. 79-2803 and Attorney General Opinion No. 85-5. However, we have located no statutory or common law authority dictating that a county must immediately collect all moneys owed upon discovering escaped payments for county provided sewer utility services.
As set forth herein, K.S.A. 19-27a01 et seq. allow a county to charge for use of a county established sewer system. Moreover, K.S.A. 19-101 permits a county to exercise the powers of home rule to determine local affairs. Absent applicable statutory provisions concerning a required procedure or time limit upon collection of a debt owed to the county, the county may permissibly establish equitable payment terms on any basis that does not disadvantage the public interest.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Theresa Marcel Nuckolls Assistant Attorney General
CJS:JLM:TMN:bas